NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

BLACK MESA INVESTMENT SERVICES, LLLP, et al., *Plaintiffs/Appellees,*

*v.*

KISHLAY ANAND, et al, *Defendants/Appellants.*

No. 1 CA-CV 25-0377

FILED 05-15-2026

---

Appeal from the Superior Court in Maricopa County
No. CV2024-022022
The Honorable Melissa Iyer Julian, Judge

**AFFIRMED**

---

COUNSEL

Cohen Dowd Quigley PC, Phoenix
By Daniel P. Quigley, J. Neal Stuart, and Drew G. Wegner
*Counsel for Plaintiffs/Appellees*

Silver Cain, Phoenix
By Leon B. Silver and Rebecca N. Cain
*Counsel for Defendants/Appellants*

Wolff Law PLLC, Phoenix
By Jordan C. Wolff
*Counsel for Defendant/Appellant Preeti Singh*

_____

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge James B. Morse Jr. joined.

_____

**J A C O B S**, Judge:

¶1 Dr. Kishlay Anand, his wife Preeti Singh, and Daan Investment Services, LLLP ask us to reverse a superior court ruling declining to vacate an arbitration award against them. This is a tall order, because A.R.S. § 12-3023 sets a high bar to overturn such an award. They argue an arbitrator prejudiced them by excluding certain evidence from the arbitration proceedings. Because the superior court correctly applied A.R.S. § 12-3023 and did not abuse its discretion in declining to vacate the arbitrator's award based on their claims of prejudice, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A. The Doctors and Their Entities

¶2 Drs. Anand, Andy Tran, Stephen Smith, and Nirav Mehta ("the Doctors") invested together over many years. Dr. Anand led or participated in many of the Doctors' ventures through Daan, of which he and his wife were the sole members. Drs. Mehta, Smith, and Tran also did business through entities they controlled: Dr. Mehta through Black Mesa Investment Services, LLLP ("Black Mesa"), Dr. Smith through Cornerstone Investment Services, LLLP ("Cornerstone"), and Dr. Tran through ETT October Investment Services, LLLP ("ETT").

¶3 There were two entities in which the Doctors were co-venturers, but over which Dr. Anand exercised operational control. The first was National Cardiovascular Management, LLC ("NCM") a business that "develops, staffs, and manages medical facilities." The Doctors were all directly or indirectly members of NCM, but Dr. Anand controlled NCM as its Chair. The second was West Valley Real Estate Investors, LLC ("West Valley"), a real estate venture the Doctors formed in 2017. Dr. Anand "was at all relevant times the manager and sole decision maker for West Valley in his capacity as manager of NCM," which was West Valley's manager.

¶4 The Doctors were also members and managers of National Cardiovascular Associates, LLC ("NCA") a physician group. Dr. Anand controlled NCA as the Chair of its board of managers.

¶5          Dr. Anand also controlled an affiliated group of medical businesses in which the other Doctors had no interest:  CareMap Holdings, LLC, doing business as Apricus Health ("CareMap/Apricus"), and its subsidiary Desert Mirage Surgery Center, LLC ("Desert Mirage").

### B.          The Doctors Discover Diversions of Funds by Dr. Anand.

¶6          In February 2018, West Valley purchased property in Avondale.  It subdivided the property into two parcels and transferred one parcel to the single-purpose entity AKOS MOB I, LLC ("AKOS I").  Dr. Anand "was the manager and sole decision maker for [] AKOS I."  AKOS I developed a three-story medical office building on its parcel.  In September 2021, on behalf of AKOS I, Dr. Anand agreed to sell the property for $33.412 million.  From the sale, "AKOS I received a net amount of $11,733,957.27," which it transferred to West Valley.

¶7          In a move that gave rise to this dispute, Dr. Anand diverted $8 million of that net amount from West Valley to Daan and told the other West Valley investors the property sold for only $25 million.  When the other Doctors discovered the actual sale price, they began to investigate their business dealings with Dr. Anand.

¶8          They learned Dr. Anand also improperly diverted funds earmarked to improve a surgery center NCM and Desert Mirage shared.  In 2021, NCM took out a loan to fund tenant improvements at the shared facility.  NCM wrote checks to fund the improvements, and Canon Medical Finance, NCM's lender, later "paid $1,013,853.48 to NCM in reimbursement."  Though the funds were NCM's, Dr. Anand had them transferred from NCM to Daan.  After these discoveries, Drs. Tran, Smith and Mehta cut ties with Dr. Anand and Daan.  They removed Dr. Anand from his management of NCM, NCA, and West Valley, removed Daan from NCM, and terminated Daan's interest in NCA.

### C.          The Arbitration Proceedings

¶9          In March 2023, Drs. Tran, Smith, and Mehta (through their LLLPs), and West Valley, NCM, and NCA ("Claimants") demanded arbitration, alleging Dr. Anand and Daan converted roughly $8 million from West Valley in connection with the AKOS I sale and roughly $1 million from NCM in connection with the tenant improvements at the NCM/Desert Mirage surgery center.  They also alleged fraud, breach of fiduciary duty, and other tortious conduct.  They claimed damages of "at least $28,890,000."  Dr. Anand and Daan denied the conversion claims and sought damages from the loss of their interests in NCM and NCA.

¶10        The parties agreed to private arbitration before Phoenix attorney William Maledon ("the Arbitrator").  *See Black Mesa Inv. Servs., LLLP, et al. v. Kishlay Anand, et al.*, AAA Case No. 01-23-0001-0090.  They agreed that "Arizona evidentiary rules shall apply to all claims and counterclaims" and that the American Arbitration Association Commercial Arbitration Rules ("AAA Rules") would "govern procedure, subject to the Arbitrator's scheduling orders."

### 1.    The Arbitrator Sets a Deadline for the Exchange of Hearing Exhibits.

¶11        In April 2023, the Arbitrator issued a case management order setting April 22, 2024, as the deadline for the parties to exchange exhibits ahead of the final arbitration hearing in May 2024.  Though other deadlines in the order changed during the proceedings, the exhibit exchange deadline did not.  Dr. Anand and Claimants jointly proposed a series of scheduling orders that confirmed the April 22, 2024 deadline to exchange exhibits.

### 2.    Dr. Anand is Served in a Separate Lawsuit.

¶12        In March 2023 — one month before the Arbitrator issued the first case management order setting the exhibit exchange deadline — Canon Financial Services, Inc. served Dr. Anand, Daan, and other CareMap/Apricus entities with a complaint ("the Canon Complaint") in a lawsuit filed in New York federal court.  Canon alleged Dr. Anand, Daan, and CareMap/Apricus entities breached medical equipment lease agreements.  Attached to the Canon Complaint as exhibits were lease agreements and lease schedules ("the Canon Loan Schedules") between Dr. Anand, his entities, and Canon.  Dr. Anand answered the Canon Complaint in November 2023 — long before the April 2024 deadline to exchange exhibits in the arbitration.

### 3.    The Arbitrator Grants Claimants Summary Judgment on Their $8 Million Conversion Claim.

¶13        In March 2024, Claimants moved for summary judgment on the $8 million conversion claim related to the AKOS I sale.  Dr. Anand responded by claiming he took the $8 million as reimbursement for money he or his entities loaned AKOS I to fund tenant improvements at the property.  He offered as evidence "77 contractor invoices or other documents from contractors or suppliers" who allegedly performed the $8 million in improvements, arguing the documents created issues of fact precluding summary judgment.  Though aware of the Canon Complaint

4

and the Canon Loan Schedules, Dr. Anand did not offer them as evidence of the funds he claimed he loaned to AKOS I.

¶14 The Arbitrator granted Claimants' motion for summary judgment. He concluded that, even if Dr. Anand or his entities made loans to or on behalf of AKOS I for which the $8 million was reimbursement, nothing in the AKOS I operating agreement allowed them to "unilaterally reimburse" themselves for such loans, and Dr. Anand "demonstrated [no other] legal right to the $8 Million at the time that the funds were transferred from AKOS I." Thus, "[b]ased on the undisputed evidence — i.e., a lack of actual legal entitlement to the $8 Million at the time of transfer in the form of a contractual right in the AKOS I Operating Agreement or at least promissory notes or accounting entries evidencing the debt allegedly owed to [Dr. Anand] by AKOS I," the Arbitrator found "the $8 Million transfer of AKOS I funds to [Daan] in November 2021 was wrongful and constituted a conversion." The Arbitrator nonetheless made his ruling "subject to [Dr. Anand's] right to prove" at the hearing that he was "entitled to offset [the $8 million] with evidence of legitimate and required loans made by [Dr. Anand] to or for the benefit of AKOS I."

### 4. The Arbitrator Excludes the Canon Complaint from Evidence.

¶15 After a pre-hearing conference on April 23, 2024, the Arbitrator instructed the parties to submit pre-hearing briefs to him by April 29, and to exchange exhibit books and submit them to him by May 2. Dr. Anand's pre-hearing brief argued he would "demonstrate at the hearing" that he "invested millions of dollars in improvements in AKOS MOB I with the understanding that these investments would be repaid . . . when the property was sold." But his pre-hearing brief did not mention the Canon Complaint or the Canon Loan Schedules. Nor did he mark them as exhibits ahead of the hearing.

¶16 From May 6 to May 13, 2024, the Arbitrator conducted the hearing. On hearing day one, Dr. Anand attempted to introduce into evidence the Canon Complaint and the attached Canon Loan Schedules. The Arbitrator did not allow the Canon Complaint or the Canon Loan Schedules into evidence because they were not timely marked as exhibits ahead of the hearing and were deemed inadmissible hearsay.

¶17 Dr. Anand's post-hearing brief acknowledged the Arbitrator allowed testimony regarding the loans. Dr. Anand also conceded that the Arbitrator had all information necessary to find Dr. Anand had not

converted the roughly $8 million from West Valley or the roughly $1 million from NCM. Dr. Anand's brief stated "the Arbitrator allowed Dr. Anand to testify regarding [the Canon] loans and that testimony is sufficient" to establish the "simple truth [] that Canon lent money to CareMap, and then CareMap used that money to pay for $8 million in tenant improvement expenses . . . based on the understanding that it would be reimbursed by [AKOS I], and the $8 million should be counted in full as reimbursement for its investment in improving the [AKOS I] building." Dr. Anand's brief also argued the "$1,013,853.48 that was transferred from NCM's bank account to Daan" "was warranted because CareMap[] had a right to the funds." Finally, Dr. Anand argued that right was "firmly established by Claimants' Exhibit 76" and "[t]hat exhibit demonstrates unequivocally that the $1,013,853.48 that was first deposited by Canon Medical Finance USA into NCM's bank account in September 2021 constituted loan proceeds on a loan for which" Dr. Anand and his CareMap/Apricus entities were solely obligated.

### 5.    The Arbitrator's Decision and Award.

¶18        The Arbitrator issued his decision and order on June 24, 2024, ruling for Claimants on the two claims at issue in this appeal: (1) the roughly $8 million conversion claim related to AKOS I; and (2) the roughly $1 million conversion claim related to the shared facility.

¶19        As to the $8 million claim, the Arbitrator ruled: "[T]he ever shifting and often implausible explanations by Respondents for the removal of the $8 Million from the net sales proceeds of the AKOS I property only serves to underscore what the Arbitrator believes to be a complete failure of proof on the part of Respondents regarding their claimed entitlement to the $8 Million in question." He noted that none of Dr. Anand's witnesses could "point to accounting records or other documents that substantiate [his] claims regarding tenant improvement expenditures at the AKOS I property for which [he is] entitled to be reimbursed." Because Dr. Anand and Daan had not met their burden of proving entitlement to any of the $8 million, the Arbitrator awarded that amount as damages against Dr. Anand, Singh and Daan.

¶20        As to the $1 million claim, the Arbitrator found: the tenant improvements were paid for by NCM from an SBA loan; "there was no evidence that Daan or other Respondents had deposited funds in NCM that were used to pay the tenant improvement costs that Canon reimbursed"; and the tenant improvements "were for the benefit of Dr. Anand's entity (Desert Mirage)." Because "there was no credible evidence . . . that showed

that the $1,013,853.48 paid by Canon to NCM rightfully belonged to Daan as opposed to NCM," the Arbitrator awarded that amount as damages against Dr. Anand, Singh and Daan.

**D.    The Superior Court Confirms the Award Over Dr. Anand's Objections and This Appeal Follows.**

¶21    After the Arbitrator finalized the award in August 2024, Claimants promptly moved the superior court to confirm it. Dr. Anand objected and moved to vacate the award. Dr. Anand argued the court should vacate the award under A.R.S. § 12-3023(A)(3) because the Arbitrator "refused to consider evidence material to the controversy," by excluding the Canon Loan Schedules. He argued this exclusion caused him substantial prejudice because the Canon Loan Schedules evidenced his entitlement to the approximately $8 million transferred from West Valley to Daan and to the approximately $1 million transferred from NCM to Daan. Claimants opposed the motion to vacate, arguing Dr. Anand "fail[ed] to meet [his] heavy burden to show" the Arbitrator "failed to consider material evidence resulting in substantial prejudice." They argued the Arbitrator properly excluded the Canon Complaint and the Canon Loan Schedules as an untimely disclosed exhibit and as inadmissible hearsay. And they argued Dr. Anand could not demonstrate substantial prejudice because the Arbitrator "permitted multiple days of testimony concerning the Canon loans," and found the testimony unconvincing.

¶22    After argument, the court denied the motion to vacate and confirmed the arbitration award. The court explained that under A.R.S. § 12-3023(A)(3), Dr. Anand had to show the "arbitrator [] refused to consider material evidence" and "that [his] rights were prejudiced by the exclusion." Citing federal cases, the court reasoned that: "[t]he exclusion of evidence is prejudicial only if it deprives the offering party of a fair hearing," and a hearing "is fundamentally fair if it includes adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." The court found the Arbitrator's evidentiary rulings were not "improper and unfairly prejudicial" because: (1) the Arbitrator "expressly considered and rejected the Canon Complaint on ground that it was inadmissible hearsay" and Dr. Anand "demonstrate[d] [no] error in that evidentiary ruling"; and (2) Dr. Anand concedes he "did not timely mark the Complaint as an exhibit as required by [the Arbitrator's] pretrial orders." The court concluded "[e]ither ground would have been a proper basis for excluding the document from evidence." As to substantial prejudice, the court ruled "even if the exclusion of the Canon complaint had been improper, the record does not support a finding that its exclusion substantially

7

prejudiced" Dr. Anand because the Arbitrator "admitted other evidence concerning the [Canon] Complaint and [the] alleged use of Canon loan proceeds to fund tenant improvements to [AKOS I]," so "the exclusion of the document itself cannot be deemed prejudicial where other evidence of the loans was admitted and considered."

¶23        The court entered final judgment on April 10, 2025.  Dr. Anand, Singh, and Daan timely appealed.  We have jurisdiction.  Ariz. Const. art. 6, § 9; A.R.S. §§ 12-2101(A)(1), -2101.01(A)(6).

## DISCUSSION

¶24        "Arizona public policy favors arbitration as a means for resolving disputes.  Accordingly, Arizona's revised uniform arbitration act 'strictly limits the superior court's options after the arbitration process is complete.'"  *Chayce Concrete, LLC v. Path Construction Sw., LLC*, 258 Ariz. 426, 429-30 ¶ 13 (App. 2024) (cleaned up).  "The superior court's review is not for factual or legal error, and the court may not substitute its view of the evidence for the arbitrator's," *id.* (cleaned up), because "the arbitrator's decisions are final and binding as to both issues of fact and law, regardless of the[ir] correctness," *Atreus Cmtys. Grp. v. Stardust Dev., Inc.*, 229 Ariz. 503, 506 ¶ 13 (App. 2012).  "The superior court may reject an arbitration award *only* on [the] narrow statutorily enumerated grounds of A.R.S. § 12-3023, as proved by the party challenging the award."  *Chayce Concrete*, 258 Ariz. at 430 ¶ 13 (cleaned up).

¶25        "Just as the superior court reviews an arbitrator's award in the light most favorable to affirming, we review the superior court's decision in the light most favorable to upholding its decision [to] confirm[] the arbitrator's award and affirm unless we conclude that the superior court abused its discretion."  *Atreus Cmtys. Grp.*, 229 Ariz. at 506 ¶ 13.

**The Superior Court Did Not Abuse Its Discretion in Declining to Vacate the Award, Because, Viewed in the Light Most Favorable to Confirming the Award, the Arbitrator's Exclusion of the Canon Loan Schedules Did Not "Substantially Prejudice" Dr. Anand.**

¶26        Asking us to reverse under A.R.S. § 12-3023(A)(3), Dr. Anand argues the court erred by excluding the Canon Loan Schedules attached to the Canon Complaint to his substantial prejudice.  Claimants disagree, arguing the Arbitrator properly excluded the Canon Complaint and the Canon Loan Schedules as either inadmissible hearsay or for untimeliness, and that their exclusion did not prejudice Dr. Anand.  We affirm the court's

conclusion that the Arbitrator's evidentiary ruling did not substantially prejudice Dr. Anand, for four reasons.

¶27        *First*, Dr. Anand's disclosure conduct suggests the exclusion of the Canon Complaint and its attachments did not substantially prejudice him. Dr. Anand had notice that exhibits had to be disclosed before the arbitration hearing — he even agreed to the disclosure orders making that so. Despite that notice, Dr. Anand failed to disclose the Canon Complaint or the Canon Loan Schedules before the disclosure deadline to which he agreed. When a party chooses not to disclose materials, in a sense they are choosing that the materials are not relevant to the proceeding. Dr. Anand's disclosure conduct makes the Arbitrator declining to receive his undisclosed evidence — which he suggests after the fact would have made all the difference — correct, because Dr. Anand established the documents were at least arguably nonmaterial by not disclosing them. Were it otherwise, every arbitration litigant could simply lie in the weeds, refusing to obey agreed-upon orders requiring disclosure but claiming after they lose that something material was excluded to their substantial prejudice. *See Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 998 (5th Cir. 1995) (A party "cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in [] court.") (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 960 (7th Cir. 1993)). That cannot be the law. Were it so, it would defeat the purpose and policy of finality attached to arbitrations endorsed by our legislature. *See Chayce Concrete*, 258 Ariz. at 429-30 ¶ 13; *cf. Fisher v. USAA Cas. Ins. Co.*, 245 Ariz. 270, 273 ¶ 14 (App. 2018) (allowing parties to withhold objections until after an unfavorable result would defeat the primary purpose of binding arbitration).

¶28        *Second*, Dr. Anand's own litigation conduct suggests a lack of prejudice from the exclusions of which he now complains. Dr. Anand did not mention the Canon Complaint or the Canon Loan Schedules when opposing Claimants' motion for summary judgment on the $8 million West Valley conversion claim. Nor did he mention them in his pre-hearing brief. *See Smith v. Olson*, 257 Ariz. 518, 527 ¶ 25 (App. 2024) (affirming superior court's exclusions of certain potentially relevant matters from trial because party failed to list his exhibits in a joint pretrial statement). Given his after-the-arbitration arguments emphasizing their supposed centrality, Dr. Anand's prior omissions are suspect and reinforce the nonmateriality of these materials. Because we review the superior court's ruling in the light most favorable to upholding the award, his prior omissions, which demonstrate the Canon Complaint's and the Canon Loan Schedules' nonmateriality, provide a sufficient basis for us to affirm. *The Spaulding LLC*

*v. Miller*, 250 Ariz. 383, 387 ¶16 (App. 2020) ("The record contains ample evidence supporting the arbitration award," so the superior court did not abuse its discretion by confirming the award.).

¶29　　　*Third*, even assuming the content of the Canon Loan Schedules were material, the Arbitrator allowed Dr. Anand and his expert to testify regarding them during the hearing.  So even if one ignores Dr. Anand's litigation conduct suggesting their nonmateriality, the Arbitrator considered their content.  Dr. Anand gives us no reason to second-guess the Arbitrator's decision to discount the relevance of that testimony, and it is not our job in reviewing a court order affirming an arbitration award to reweigh the evidence.  *See RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 136 ¶ 11 (App. 2016) ("Pursuant to A.R.S. § 12–3023(A), on appeal, we will not review the merits of an arbitrator's factual findings or legal conclusions.").

¶30　　　*Fourth*, Dr. Anand's post-hearing brief also shows the lack of substantial prejudice to him from the exclusion of these materials.  Dr. Anand could have argued in his post-hearing brief that the Arbitrator's evidentiary ruling deprived him of a fair hearing.  But he did the opposite.  Dr. Anand argued his testimony regarding the Canon Loan Schedules was "sufficient" to defeat the $8 million West Valley conversion claim.  Though he now argues the court did not consider whether the exclusion of the Canon Loan Schedules undermined his ability to defend against the $1 million NCM conversion claim, his post-hearing brief said his right to that money was "firmly established" by evidence the Arbitrator admitted.  Considering this statement in the light most favorable to upholding the award, it too demonstrates a lack of prejudice.

¶31　　　Given these many indicia that Dr. Anand was not substantially prejudiced by the Arbitrator's exclusion ruling, we see no error in the superior court's affirming the award.  While Dr. Anand questions the superior court's descriptions of the legal standard for review of arbitration awards, our ruling as to substantial prejudice makes it unnecessary to consider those further arguments.

**CONCLUSION**

**¶32** For these reasons, we affirm the superior court's denial of the motion to vacate and its confirmation of the arbitration award. We grant Claimants their costs, and also their request for attorneys' fees under A.R.S. § 12-3025(C), subject to their compliance with ARCAP 21.

